UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 28, 2018

Victoria Rummel
4213 Cottington Road
Nottingham, MD 21236

David M. Mansfield, Esq.
Social Security Administration
6401 Security Boulevard Room 617
Baltimore, MD 21235

   RE: *Victoria Rummel v. Commissioner, Social Security Administration*;
      Civil No. SAG-17-1688

Dear Ms. Rummel and Counsel:

  On June 20, 2017, Plaintiff Victoria Rummel, who proceeds *pro se*, petitioned this Court to review the Social Security Administration's final decision to reopen and vacate a prior decision awarding her a closed period of disability benefits. [ECF No. 1]. I have considered the Commissioner's Motion for Summary Judgment, in addition to two filings made by Ms. Rummel, which are not formal motions, but have been considered in full. [ECF No. 20, 21, 23]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 4051(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

  On November 22, 2010, an Administrative Law Judge ("ALJ") issued a fully favorable decision awarding disability benefits to Ms. Rummel for a closed period between July 20, 2008- June 1, 2010. (Tr. 35-41). At the November 2, 2010 hearing prior to the ALJ's decision, Ms. Rummel testified that she worked at Pets on Wheels as "the coordinator" and that she worked "from home, and the hours are whenever I'm up to it." (Tr. 382). She testified that she was currently earning "$1,000 a month." (Tr. 383). Due to her low salary, the ALJ determined, in relevant part, that Ms. Rummel "has not engaged in substantial gainful activity since July 20, 2008" as a result of her "ulcerative colitis, colectomy, ilestomy, hypertrophic obstructive cardiomyopathy, and status-post myomectomy." (Tr. 38-39). Following the ALJ's 2010 decision, Ms. Rummel received a lump sum payment of benefits for the closed period.

As a result of some factual developments described below, on December 23, 2015, the Commissioner notified Ms. Rummel of a proposed revision of the prior decision granting her the closed period of benefits. (Tr. 96-98). According to that correspondence, if the 2010 decision were to be vacated, Ms. Rummel would be charged with an overpayment of benefits. *Id.* The letter explained that Ms. Rummel had the right to request a hearing within ten days of the date of the letter. *Id.* Because Ms. Rummel did not respond, an ALJ issued a written decision on the case without holding a hearing.[1] (Tr. 18) (citing 20 C.F.R. § 404.848(b)).

In assessing this appeal, I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all steps of the sequential evaluation. The ALJ ruled in Ms. Rummel's favor at step one, and determined that she had not engaged in substantial gainful activity during the relevant period, since her earnings did not exceed the threshold. (Tr. 21); *see* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Ms. Rummel claimed prevented her from working. (Tr. 21); *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ determined that, during the relevant period, Ms. Rummel suffered from the severe impairments of "ulcerative colitis, colovesical fistula, status post colectomy and ileostomy and hypertrophic obstructive cardiomyopathy status post myomectomy." (Tr. 21). At step three, the ALJ reviewed the applicable listings and determined that none had been met. (Tr. 21-22).

At step four, the ALJ found that, during the relevant period from July 20, 2008 through June 1, 2010, Ms. Rummel "had the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) except she can frequently balance, stoop, kneel and crouch, occasionally crawl and climb, except can never use ladders, ropes and scaffolds." (Tr. 22). That RFC assessment differed materially from the more restrictive RFC assessment in the 2010 opinion. *Compare* (Tr. 22) *with* (Tr. 39). In determining the RFC in 2016, the ALJ reviewed Ms. Rummel's medical records and her statements, during the relevant time frame, about her limitations. (Tr. 23-24). The ALJ assigned either "partial weight" or "great weight" to the opinions of the non-examining State agency physicians, both of whom determined that Ms. Rummel would be capable of performing a restricted range of light work. (Tr. 25).

In addition, in the 2016 opinion, the ALJ cited to substantial evidence supporting a finding that Ms. Rummel's testimony about her limitations was not credible. In 2015, the Baltimore County Police Department ("BCPD") investigated an allegation that Ms. Rummel and

---

[1] Ms. Rummel's attorney from her 2010 case, Sharon A. Christie, filed a letter on December 29, 2015 withdrawing her appearance. (Tr. 99).

her then-husband, David Rummel, were embezzling funds from Pets on Wheels. (Tr. 111-16). In the course of that investigation, Ms. Rummel told the BCPD that her job at Pets on Wheels was a full-time job, and that she had been promoted to Executive Director around 2010. (Tr. 111). Her husband, David Rummel, told the investigator that Ms. Rummel's job is "24-7. It's a full time gig." *Id.* David Rummel told the investigator that he did some part-time IT work for Pets on Wheels, and that his salary for serving as a part-time employee was higher than the salary Ms. Rummel received as Executive Director. *Id.* Ms. Rummel also told the BCPD that "one year she worked over 400 hours outside the home and that did not include the time she spent working at home." (Tr. 112). The report further states, "Special Agent Shanahan asked her if she had purposely kept her salary low in fear of losing her disability benefits. She stated[,] 'yes, but I believed in what I was doing.' When asked if she was working the system, she stated, 'Yeah but that isn't what this is about.'" *Id.* An investigator from SSI reviewed the SSA database and found that Ms. Rummel had earned $9,350 from Pets on Wheels in 2008, and then approximately $12,000 annually from 2009-2013. (Tr. 119). The investigator interviewed Melvin Knight, the president of Pets on Wheels, who stated that Ms. Rummel "should have been paid a much larger salary because she was putting in more than 40 hours per week." (Tr. 120). A volunteer and board member for Pets on Wheels, Barbara Waskiewicz, told the investigator that she worked closely with Ms. Rummel and estimated that Ms. Rummel "was working approximately 40-50 hours a week." *Id.* Finally, the accountant for Pets on Wheels, Ken Tabler, told the investigator that the prior Executive Director had received a salary of $23,500. *Id.* In 2010, the Board of Directors attempted to increase Ms. Rummel's salary, but Ms. Rummel told the board that she was on disability and that her salary was "capped." (Tr. 121). Around that time, David Rummel became a paid part-time computer support employee, and received an annual salary of $13,000. *Id.* When the Rummels left Pets on Wheels, the new Executive Director was paid $27,000 per year and the new IT specialist received only $6,000 per year. *Id.*

In light of the substantial evidence demonstrating that Ms. Rummel was working full-time and was artificially limiting her earnings to remain eligible to receive disability benefits, the ALJ found Ms. Rummel capable of performing her past relevant work as a volunteer coordinator. (Tr. 26). The ALJ also made alternative findings, based on a written questionnaire to a vocational examiner, that Ms. Rummel would have been capable of other jobs existing in significant numbers in the national economy. (Tr. 27). All of those findings are supported by the substantial evidence cited above.

Ms. Rummel's filings, and the attached exhibits, focus largely on her medical condition in 2017. [ECF Nos. 20, 23]. None of that information is relevant to the only question presented to this Court, which is whether the ALJ's 2016 determination that Ms. Rummel was not disabled in 2008-2010 was supported by substantial evidence. Any assertions regarding her alleged disability in 2016 or 2017 will have to be adjudicated in the form of a new application for benefits at the Social Security Administration.

Ms. Rummel also contests some of the factual assertions made by the Pets on Wheels employees regarding the number of hours she worked and the reasons for the amount of her salary. These new statements from Ms. Rummel were not presented to the ALJ in 2016, because

Ms. Rummel did not request a hearing. Even if Ms. Rummel's new allegations were to be assessed under the standard of "new and material evidence," the allegations would not qualify as "material" because they would be unlikely to change the ALJ's conclusion. *See Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) ("Evidence is only material where there is 'a reasonable possibility that the new evidence would have changed the outcome.'") (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc)). Here, the ALJ cited to ample substantial evidence, from several independent sources, substantiating the position that Ms. Rummel had worked full-time and had asked to receive a lower salary than the Executive Directors serving immediately before and after her term. (Tr. 24-25). In addition, the fact that Ms. Rummel's husband received a much higher salary than the computer support employee succeeding his tenure corroborates the notion that Ms. Rummel's salary was intentionally and artificially depressed. All of the facts cited by the ALJ, then, support his adverse credibility assessment. Ms. Rummel's new assertions, years after the fact, contradicting that substantial evidence would not have altered the ALJ's ultimate conclusion. Accordingly, the ALJ's decision must be affirmed.

For the reasons set forth herein, Defendant's Motion for Summary Judgment, (ECF No. 21), is GRANTED. The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

    Sincerely yours,

    /s/

    Stephanie A. Gallagher
    United States Magistrate Judge